## UNITED STATES DISTRICT COURT
## THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| PATRICIA KELLEY, JEREMY WILSON, DANTE MELENDEZ, and DARRELL STEWART, on behalf of themselves and a class of all others similarly situated, | Civil Action No. 1:21-CV-785 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** <br> **and DEMAND FOR JURY TRIAL** |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. | |

Plaintiffs Patricia Kelley, Jeremy Wilson, Dante Melendez, and Darrell Stewart (collectively "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant The Procter & Gamble Company ("P&G" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

## INTRODUCTION

1.      This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Old Spice and Secret spray-on antiperspirant and deodorant products that contain benzene, a known human carcinogen.[1]

2.      "Antiperspirant body spray products are considered over-the-counter drugs and certain deodorant body sprays are considered cosmetics that are regulated by the U.S. Food and Drug Administration ("FDA")."[2]  The FDA has several safety and effectiveness regulations in

---

[1] The products at issue include the following antiperspirant and deodorant sprays: Old Spice and Secret (the "Affected Products").  Plaintiffs reserve the right to amend this list if further investigation and/or discovery reveals that the list should be amended.

[2] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-

place that govern the manufacture and marketing of all antiperspirant and deodorant products, including safety data on its ingredients.[3]

3.      On November 3, 2021, Valisure, an independent pharmacy that analyzes the safety of consumer products, filed a citizen petition with the FDA detailing its findings that it detected high levels of benzene in many body spray products, including several of Defendant's body spray products.   Valisure called for the FDA to recall all batches of Defendant's body spray antiperspirant products that contained benzene on the basis that they are adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") in violation of 21 U.S.C. § 351 and misbranded under Section 502 of the FDCA in violation of 21 U.S.C. § 352.  Valisure also called for the FDA to recall all identified batches of deodorant body sprays containing benzene on the basis that, due to contamination with a known human carcinogen, the products are adulterated under Section 601 of the FDCA in violation of 21 U.S.C. § 361 and misbranded under Section 602 of the FDCA in violation of 21 U.S.C. § 362.

4.      On November 23, 2021, twenty days after Valisure released its findings, P&G issued a recall of various Old Spice and Secret aerosol sprays with expiration dates through September 2023.[4]   According to P&G's statement: "our investigation showed that traces of benzene came from the propellant that sprays the product out of the can."[5]  P&G did not say when

---

Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021); *See also* 21 C.F.R. § 350; 21 C.F.R. 362, *et seq.*

[3] *FDA Authority Over Cosmetics: How Cosmetics Are Not FDA-Approved, but Are FDA-Regulated*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/cosmetics/cosmetics-laws-regulations/fda-authority-over-cosmetics-how-cosmetics-are-not-fda-approved-are-fda-regulated (last visited November 19, 2021).

[4] *P&G Issues Voluntary Recall of Specific Old Spice and Secret Aerosol Spray Antiperspirants and Old Spice Below Deck Aerosol Spray Products Due to Detection of Benzene*, U.S. Food & Drug Administration, https://fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice (last visited November 29, 2021).

[5] Bruce Y. Lee, *FDA: P&G Recalls Antiperspirant Sprays Due To Cancer Risk of Benzene*, Forbes.com, https://www.forbes.com/sites/brucelee/2021/11/24/fda-pg-recalls-antiperspirants-body-sprays-due-to-cancer-risk-of-benzene/?sh=48b2403c4f32 (last visited November 29, 2021).

that investigation was conducted. P&G did not say if the investigation was conducted on its own, in collaboration with any of its manufacturing partners, or on its behalf by a third-party. Most significantly, P&G did not say when it first learned that benzene was in its products. As a result of P&G's use of benzene-contaminated supplies, eighteen products have been recalled by P&G, and in contradiction to the FDA's guidance on benzene, P&G claims the amount of benzene in the products "would not be expected to cause adverse health consequences" but "is conducting this recall out of an abundance of caution."[6]

5.     Despite P&G's claim as to its relative harmlessness, benzene is a known human carcinogen. The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[7] Similarly, the Department of Health and Human Services ("DHHS") has determined that benzene causes cancer in humans.[8] Benzene exposure has been linked with acute lymphocytic leukemia, chronic lymphocytic leukemia, multiple myeloma, and non-Hodgkin lymphoma.[9]

6.     The presence of benzene in a spray "may be an even bigger problem" than when it is present in a product like lotions or hand sanitizers.[10] "[A] spray can end up lingering in the air long after you've finished" using the product, and "[a]nyone who walks into the bathroom, the

---

[6] *P&G Issues Voluntary Recall of Specific Old Spice and Secret Aerosol Spray Antiperspirants and Old Spice Below Deck Aerosol Spray Products Due to Detection of Benzene*, U.S. Food & Drug Administration, https://fda.gov/safety/recalls-market-withdrawals-saffety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice (last visited November 29, 2021).

[7] *IARC Monographs on the Identification of Carcinogenic Hazards to Humans: List of Classifications*, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER, WORLD HEALTH ORGANIZATION, https://monographs.iarc.who.int/list-of-classifications (last visited November 19, 2021).

[8] *Facts About Benzene*, CENTERS FOR DISEASE CONTROL AND PREVENTION (April 4, 2018) https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited November 19, 2021).

[9] *Benzene and Cancer Risk*, AMERICAN CANCER SOCIETY https://www.cancer.org/cancer/cancer-causes/benzene.html (last visited November 19, 2021).

[10] Bruce Y. Lee, *FDA: P&G Recalls Antiperspirant Sprays Due To Cancer Risk of Benzene*, Forbes.com, https://www.forbes.com/sites/brucelee/2021/11/24/fda-pg-recalls-antiperspirants-body-sprays-due-to-cancer-risk-of-benzene/?sh=48b2403c4f32 (last visited November 29, 2021).

office . . . or wherever you've groomed yourself may then inhale the persistent mist or get it in their eyes or on their skin."[11]  Thus, benzene in aerosol products "may be posing a recurrent danger for both you and those around you."[12]

7.      According to Valisure, because many of the products it tested did not contain detectable levels of benzene, it appears that benzene is not a requisite component of manufacturing or packaging body sprays.[13]  As such, "any significant detection of benzene should be deemed unacceptable."[14]

8.      David Light, Founder and CEO of Valisure stated that "[t]he presence of this known human carcinogen in body spray products regularly used by adults and adolescents in large volumes makes this finding especially troubling[.]"[15]

9.      The presence of benzene in the Affected Products is not disclosed on the Affected Products' labels. In fact, P&G states on its website that it does not use benzene in its products.[16] Therefore, Plaintiffs, by use of reasonable care, could not have discovered that the Affected Products were contaminated with benzene.

10.     Plaintiffs and Class members purchased the Affected Products with the expectation that the products were safe, including free of carcinogens. Because Defendant sold products to consumers that contain dangerous levels of benzene, Plaintiffs and the Classes were deprived of the benefit of their bargain.

---

[11] *Id.*

[12] *Id.*

[13] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).

[14] *Id.*

[15] *Id.*

[16] *Ingredient choices and how we make them*, https://us.pg.com/ingredients/ (last visited November 19, 2021).

11.     In order to prevent Defendant from selling misbranded, illegal, and dangerous products in the future, Plaintiffs seek injunctive relief including, but not limited to requiring Defendant to improve internal testing protocols and also requiring independent testing of its products to ensure that its body spray products are free of benzene before they are sold.

12.     Accordingly, Plaintiffs bring this action on behalf of themselves and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) violations of the Delaware Consumer Fraud Act, 6 Del. Code § 2513 *et seq*.; (iii) violations of the Kentucky Consumer Protection Act, Ky. Rev. Stat. § 367.110. *et seq*.; (iv) violations of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq*.; (v) violations of the Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. And Com. Code § 17.41, *et seq*.; and (vi) unjust enrichment.

## PARTIES

13.     Plaintiff Patricia Kelley is a resident and citizen of the state of Ohio.  Between 2019 and November 2021, Ms. Kelley purchased Secret Aerosol Powder Fresh spray-on antiperspirant on a regular basis for personal use.  Ms. Kelley purchased the Secret Aerosol Powder Fresh spray-on antiperspirant from a CVS retail store located in Milford, Ohio, and from other retail stores including a local Walgreens. When purchasing the Secret Powder Fresh spray-on antiperspirant, Ms. Kelley reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the product was properly manufactured, free from defects, and safe for its intended use. Ms. Kelley relied on these representations and warranties in deciding to purchase the product and these representations and warranties were part of the basis of the bargain in that she would not have purchased the Secret Aerosol Powder Fresh spray-on antiperspirant from Defendant if she had known that it was not, in fact, properly manufactured, free from defects, or safe for its intended use.

14.     Plaintiff Jeremy Wilson is a resident and citizen of the state of Kentucky.  Between March 2018 and December 2020, Mr. Wilson purchased Old Spice spray-on antiperspirant approximately three times per month.  Mr. Wilson purchased the Affected Products from a Walmart retail store located in Elizabethtown, Kentucky, a Target retail store located in Elizabethtown, Kentucky, and a Dollar General retail store located in Rineyville, Kentucky. When purchasing the Affected Products, Mr. Wilson reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the products were properly manufactured, free from defects, and safe for their intended use. Mr. Wilson relied on these representations and warranties in deciding to purchase the products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Affected Products from Defendant if he had known that they were not, in fact, properly manufactured, free from defects, or safe for their intended use.

15.     Plaintiff Dante Melendez is a resident and citizen of the state of Kentucky.  Beginning in early 2020 and through 2021, Mr. Melendez regularly purchased Old Spice spray-on antiperspirant/deodorant and Secret spray-on antiperspirant/deodorant.  Mr. Melendez purchased the Affected Products from Walmart, Walgreens, and H-E-B Grocery retail stores located in Waco and Bellmead, Texas. When purchasing the Affected Products, Mr. Melendez reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the products were properly manufactured, free from defects, and safe for their intended use. Mr. Melendez relied on these representations and warranties in deciding to purchase the products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Affected Products from Defendant if he had known that they were not, in fact, properly manufactured, free from defects, or safe for their intended use.

16. Plaintiff Darrell Stewart is a resident and citizen of the state of Delaware. Beginning in 2019 and through 2021, Mr. Stewart purchased Old Spice spray-on antiperspirant/deodorant and Secret spray-on antiperspirant/deodorant on a monthly basis during the summer months. Mr. Stewart purchased the Affected Products from Walmart, Walgreens, and Rite Aid retail stores located in Georgetown, Lewes, and Rehoboth, Delaware. When purchasing the Affected Products, Mr. Stewart reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the products were properly manufactured, free from defects, and safe for their intended use. Mr. Stewart relied on these representations and warranties in deciding to purchase the products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Affected Products from Defendant if he had known that they were not, in fact, properly manufactured, free from defects, or safe for their intended use.

17. Defendant P&G is an Ohio corporation with its principal place of business and headquarters located at One Procter & Gamble Plaza in Cincinnati, Ohio. At all relevant times hereto, Defendant was engaged in manufacturing, marketing, distributing, and advertising the Affected Products throughout the United States. Defendant created and/or authorized the false and misleading advertising and labeling of the Affected Products.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

19. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this State and regularly sells and markets its product in this State. Defendant

derives substantial revenue from sales of its products in this State, with knowledge that its products are being marketed and sold for use in this State.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered here and conducts substantial business in this District.

## FACTUAL ALLEGATIONS

A.     **The Dangers of Benzene**

21.     According to the U.S. Centers for Disease Control and Prevention ("CDC"), the U.S. Department of Health and Human Services has determined that benzene causes cancer in humans. Similarly, the WHO and the IARC have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[17]

22.     The NIOSH and CDC identify "exposure routes" for benzene to include: "inhalation, skin absorption, ingestion, skin and/or eye contact."[18]

23.     The NIOSH and CDC identify "target organs" associated with human exposure to benzene to include: "eyes, skin, respiratory system, blood, central nervous system, bone marrow.[19]

24.     The CDC warns that "[b]enzene works by causing cells not to work correctly. For example, it can cause bone marrow not to produce enough red blood cells, which can lead to anemia. Also, it can damage the immune system by changing blood levels of antibodies and causing the loss of white blood cells."[20]

25.     As for "where benzene is found and how it is used," the CDC states that "[s]ome industries use benzene to make other chemicals that are used to make plastics, resins, and nylon

---

[17] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[18] *NIOSH Pocket Guide to Chemical Hazards: Benzene*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/niosh/npg/npgd0049.html (last visited November 19, 2021).
[19] *Id.*
[20] *Facts About Benzene*, CENTERS FOR DISEASE CONTROL AND PREVENTION (April 4, 2018) https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited November 19, 2021).

and synthetic fibers. Benzene is also used to make some types of lubricants, rubbers, dyes, detergents, drugs, and pesticides."[21]

26.     The CDC has stated that ways in which people "could be exposed to benzene" include:

- Outdoor air contains low levels of benzene from tobacco smoke, gas stations, motor vehicle exhaust, and industrial emissions.

- Indoor air generally contains levels of benzene higher than those in outdoor air. The benzene in indoor air comes from products that contain benzene such as glues, paints, furniture wax, and detergents.

- The air around hazardous waste sites or gas stations can contain higher levels of benzene than in other areas.

- Benzene leaks from underground storage tanks or from hazardous waste sites containing benzene can contaminate well water.

- People working in industries that make or use benzene may be exposed to the highest levels of it.

- A major source of benzene exposure is tobacco smoke.[22]

27.     A 2010 study titled "Advances in Understanding Benzene Health Effects and Susceptibility" summarized the epidemiological studies of the carcinogenic effects of benzene exposure and an overview of the hematotoxic effects of benzene.[23]  The 2010 study concluded:

a.  There is probably no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive fashion.

b.  Exposure to benzene can lead to multiple alterations that contribute to the leukemogenic process, indicating a multimodal mechanism of action.

---

[21] *Id.*
[22] *Id.*
[23] Martyn T. Smith, *Advances in Understanding Benzene Health Effects and Susceptibility*, ANNUAL REVIEWS, Vol. 31:133-148 (April 21, 2010) https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646 (last visited November 19, 2021).

c. Benzene is a ubiquitous chemical in our environment that causes acute leukemia and probably other hematological cancers.

28. The FDA currently recognizes the danger of benzene and, as a result, has claimed it should not be used in the manufacture of any component of a drug product due to its unacceptable toxicity effect.[24]

29. Where the use of benzene or other Class 1 solvents is *unavoidable*, the FDA has stated that the levels should be restricted, and benzene is restricted under such guidance to 2 parts per million ("ppm").[25]

30. Because many of the products Valisure tested did not contain detectable levels of benzene, it does not appear that benzene use is unavoidable for their manufacture.[26] As such, "[a]ny significant detection of benzene should be deemed unacceptable."[27]

31. The FDA regulates antiperspirants to ensure that they meet safety and effectiveness standards. *See* 21 CFR §§ 350.1. The FDA has also identified acceptable active ingredients for products labeled as antiperspirant.[28] Benzene is not one of those acceptable ingredients.[29]

32. As such, the presence of this known human carcinogen in body spray products widely used makes the presence of benzene in body spray products especially troubling.

---

[24] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[25] *Id.*
[26] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[27] *Id.*
[28] 21 CFR § 350.10.
[29] *Id.*

**B.**     **The Valisure Lab Report Identified High Levels of Benzene In Defendant's Products**

33.     Valisure analyzed 108 unique batches from 30 brands of deodorant and antiperspirant aerosol products.

34.     Valisure identified twenty-four body spray products or product line batches which contained levels of benzene at 2 ppm or higher.  Ten of the twenty-four batches are manufactured by P&G:

| Brand | UPC | Lot | Expiration | Type | Description | API | Percent API | Average ppm | % St Dev |
|-------|-----|-----|------------|------|-------------|-----|-------------|-------------|----------|
| Old Spice | 012044001912 | 11671458SQ | 06/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 17.7 | 12% |
| Old Spice | 012044001912 | 11671458SB | 06/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 17.4 14.1* | 8% |
| Secret | 037000711087 | 11721458SG | 06/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 16.2 13.1* | 17% |
| Secret | 037000711087 | 11701458SH | 06/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 16.1 | 16% |
| Tag | 850007395421 | M 21075 | Unknown | Deodorant | Midnight, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 14.1 | 28% |
| Secret | 037000711094 | 12181458SD | 08/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 12.5 | 12% |
| Sure | 883484002278 | (L)21175 | 05/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 11.1 6.41* | 14% |
| Equate | 681131346443 | 1E05 | 05/2023 | Antiperspirant | Dry Spray, Cucumber | Aluminum Chlorohydrate | 20.2 | 6.15 3.21* | 5% |
| Old Spice | 037000695707 | 246144504 | Unknown | Deodorant | Below Deck, Powder Spray, Feel Drier & Cleaner, Down Below, Fresh Air | N/A (Cosmetic Product) | N/A | 5.22 6.52* | 3% |
| Suave | 079400751508 | 07151AD14 | 07/2023 | Antiperspirant | 24 Hour Protection, Powder, Aerosol | Aluminum Chlorohydrate | 19.1 | 5.21 | 4% |

| Right Guard | 017000068060 | Q405410200 | Unknown | Antiperspirant | Sport, Fresh, Up To 48 HR Odor Protection | Aluminum Chlorohydrate | 20 | 5.00 5.07* | 10% |
|---|---|---|---|---|---|---|---|---|---|
| Secret | 037000798842 | 1109145SSN | 04/2023 | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose | Aluminum Chlorohydrate (Anhydrous) | 23.5 | 4.85 | 6% |
| Old Spice | 037000730347 | 11001458SC | 04/2023 | Antiperspirant | Sweat Defense, Stronger Swagger, Dry Spray, Sweat & Odor Protection | Aluminum Chlorohydrate | 23.5 | 4.54 | 24% |
| Brut | 827755070108 | (L)21155 | 05/2023 | Antiperspirant | Classic, 24 Hr Protection | Aluminum Chlorohydrate | 20.9 | 4.13 | 7% |
| Sure | 883484002278 | 21172 | 05/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 3.59 | 35% |
| Old Spice | 012044001912 | 12631458SB | 09/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 3.34 | 16% |
| Right Guard | 017000068060 | Q610900732 | Unknown | Antiperspirant | Sport, Fresh, Up To 48 HR Odor Protection | Aluminum Chlorohydrate | 20 | 2.61 | 16% |
| Secret | 037000798842 | 11991458SR | 07/2023 | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose | Aluminum Chlorohydrate (Anhydrous) | 23.5 | 2.58 | 20% |
| Tag | 854152008786 | 0252020203 | Unknown | Deodorant | Sport, Fearless, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 2.53 | 46% |
| Sure | 883484002278 | (L)21099 | 03/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 2.36 | 9% |
| Brut | 827755070085 | (L)21167 | 05/2023 | Antiperspirant | Classic, 24 Hr Protection | Aluminum Chlorohydrate | 20.9 | 2.34 2.47* | 4% |
| Tag | 854152008762 | 0252035602 | Unknown | Deodorant | Sport, Dominate, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 2.30 | 36% |
| Suave | 079400785503 | 08091AD00 | 08/2023 | Antiperspirant | 24 Hour Protection, Fresh, Aerosol | Aluminum Chlorohydrate | 19.1 | 2.30 2.11* | 9% |
| Suave | 079400785503 | 08091AD02 | 08/2023 | Antiperspirant | 24 Hour Protection, Fresh, Aerosol | Aluminum Chlorohydrate | 19.1 | 2.24 | 6% |

35.     In fact, Defendant's products had the highest levels of benzene detected in any of the body spray products tested by Valisure.

36.     The *lowest* level of benzene found in the P&G products listed in the chart above is 2.58 ppm (Secret, Rose, Fresh Collection Body Spray), or 29% higher than the 2 ppm concentration limit for "unavoidable" uses.

37.     The *highest* level of benzene found in the P&G products listed in the chart above is 17.7 ppm (Old Spice Pure Sport Aerosol Antiperspirant), or more than 8 times the concentration limit for "unavoidable" uses.

38.     The presence of benzene in the Affected Products is not disclosed on the Affected Products' labels.  Therefore, Plaintiffs, by use of reasonable care, could not have discovered that the Affected Products were contaminated with Benzene.

39. By marketing and selling its body spray products in the stream of commerce with the intent that its Affected Products would be purchased by Plaintiffs and the Classes, Defendant warrants that the Affected Products are safe to use rather than adulterated body sprays containing a dangerous, cancer-causing chemical.

**C.** **Defendant Recalled Various Products Containing Benzene**

40. On November 23, 2021, P&G announced the recall of eighteen Old Spice and Secret products which contained benzene.[30] P&G claims the benzene worked its way into the products via propellant obtained from a third-party supplier.[31] In the aftermath, P&G requested retailers remove the products from shelves, has begun offering reimbursement for the products purchased, recommends against using the products, and established a hotline regarding the recall.[32] P&G claims it does not expect to cause adverse health consequences based on the levels of benzene in the product, yet recommends "[c]onsumers should contact their physician or healthcare provider if they have experienced any problems that may be related to using [its] products" and such adverse reactions should be reported to the FDA's MedWatch Adverse Event Reporting program.[33]

**D.** **Defendant's False and Misleading Advertising Campaign**

41. Benzene is not listed on the Affected Product labels as either an active or inactive

---

[30] *P&G Issues Voluntary Recall of Specific Old Spice and Secret Aerosol Spray Antiperspirants and Old Spice Below Deck Aerosol Spray Products Due to Detection of Benzene*, U.S. Food & Drug Administration, https://fda.gov/safety/recalls-market-withdrawals-saffety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice (last visited November 29, 2021).

[31] Anna Edney, *P&G Recalls Old Spice, secret Sprays After Carcinogen Found*, Bloomberg.com, https://www.bloomberg.com/news/articles/2021-11-23/p-g-recalls-old-spice-secret-sprays-after-carcinogen-found (last visited November 29, 2021).

[32] *P&G Issues Voluntary Recall of Specific Old Spice and Secret Aerosol Spray Antiperspirants and Old Spice Below Deck Aerosol Spray Products Due to Detection of Benzene*, U.S. Food & Drug Administration, https://fda.gov/safety/recalls-market-withdrawals-saffety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice (last visited November 29, 2021).

[33] *Id.*

ingredient, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Affected Products.

42.     Rather, Defendant has long represented that "[s]afety is at the heart of everything [they] do."[34]   Before a new product is marketed, Defendant claims to "go beyond regulatory compliance to ensure every ingredient's safety through a four-step, science-based process." Defendant further claims to "use the same process as regulatory agencies around the world, like US FDA, EPA, the Eu, the WHO, and others."[35]

43.     In fact, P&G expressly warrants that that benzene is a material "we do not use as [an] ingredient[] in any of our formulated products (health care, skin and personal cleansing, hair care, laundry, home care, and oral care)[.]"[36]

---

[34] *Product Safety*, https://us.pg.com/product-safety/ (last visited November 6, 2021); *see also General Product Information*, https://oldspice.com/faq (last visited November 19, 2021).
[35] *Id.*
[36] *Ingredient choices and how we make them*, https://us.pg.com/ingredients/ (last visited November 19, 2021).



## Ingredients we do not use

Here is a list of some of the most common materials we get asked about that we do not use as
ingredients in any of our formulated products (health care, skin and personal cleansing, hair care,
laundry, home care, and oral care):

- Alkylphenols and alkylphenol
  ethoxylates
- Benzene
- Bisphenol A (not in formulas*)
- Heavy metals: Arsenic, Lead, Chromium
  VI, Mercury, Cadmium, Nickel
- Microbeads

- Organotins (TBT, DBT, MBT, DOT)
- PVC (not in formulas*)
- PAHs (Polycyclic aromatic hydrocarbons)
- PCBs (Polychlorinated biphenyls)
- Phthalates**
- Triclosan
- Triclocarban**

This list is not exhaustive but a starting point. For specific product ingredients, please see the Brand
website **here**.

44.     As such, Defendant's advertising campaign is false and misleading.  The presence
of benzene in the Affected Products renders the Affected Products illegal and unfit for sale in trade
or commerce.  Plaintiffs would not have purchased the Affected Products had they been truthfully
and accurately labeled.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal
Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the
> United States for personal/household use within any applicable limitations period
> (the "Nationwide Class").

46.     Plaintiff Stewart brings this action individually and on behalf of the following
Delaware subclass:

15

> All persons who purchased one or more of Defendant's Affected Products in the state of Delaware for personal/household use within any applicable limitations (the "Delaware Subclass").

47. Plaintiff Wilson brings this action individually and on behalf of the following Kentucky subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of Kentucky for personal/household use within any applicable limitations (the "Kentucky Subclass").

48. Plaintiff Melendez brings this action individually and on behalf of the following Texas subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of Texas for personal/household use within any applicable limitations (the "Texas Subclass").

49. Plaintiff Kelley brings this action individually and on behalf of the following Ohio subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of Ohio for personal/household use within any applicable limitations (the "Ohio Subclass").

50. Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and its current or former employees, officers, and directors; and (3) individuals who allege personal bodily injury resulting from the use of Affected Products.

51. Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's

records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

52.     Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

    a.  Whether the Affected Products contain benzene;

    b.  Whether Defendant knew or should have known that the Affected Products contain benzene;

    c.  Whether Defendant's representations and omissions, in its marketing, advertising, labeling, and packaging of the Affected Products, are misleading;

    d.  Whether Defendant's representations and omissions, in its marketing, advertising, labeling, and packaging of the Affected Products are reasonably likely to deceive;

    e.  Whether Defendant engaged in false and misleading advertising;

    f.  Whether Defendant had knowledge that those representations were false, deceptive, and/or misleading;

    g.  Whether Defendant's internal testing showed that its products contained benzene;

    h.  Whether Defendant violated the state consumer protection statutes alleged herein;

    i.  Whether Defendant breached its express warranties;

j.   Whether Defendant was unjustly enriched;

k.   Whether Defendant has the capability to implement changes to processes, practices, and policies regarding testing its products for contaminants, including, but not limited to benzene; and

l.   The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

53.   Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

54.   Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

55.   Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

56.   Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by

individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I

### BREACH OF EXPRESS WARRANTY
**(On behalf of Plaintiffs and the Class (or alternatively, the Subclasses) against Defendant)**

57.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

58.     Defendant marketed and sold its body spray products in the stream of commerce with the intent that its Affected Products would be purchased by Plaintiffs and the Classes.

59.     In connection with the sale of the Affected Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Affected Products were body sprays that contained only those active and inactive ingredients listed on the Products' labels. Those active and inactive ingredients do not include benzene, a known human carcinogen. Defendant further expressly warrants that the Affected Products are body spray antiperspirant and deodorant products, rather than adulterated body sprays containing dangerous chemicals.

60.     Defendant also expressly warrants that benzene is not used in any of its formulated products.

61.    The representations, as set forth above, contained, or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

62.    Plaintiffs, by use of reasonable care, could not have discovered the breached warranty and realized the hidden increased risks and unreasonable dangers of using the Affected Products.

63.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and the Class members have been injured and harmed because they would not have purchased the products had they known the true facts regarding the benzene content.

64.    On November 10, 2021, prior to filing this action, Defendant was served with a pre-suit notice letter pursuant to U.C.C. §§ 2-313 and 2-607.

## COUNT II

**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**Ohio Revised Code Section 1345.01,** *et seq*.
**(on behalf of Plaintiff Kelley and the Ohio Subclass against Defendant)**

65.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

66.    Plaintiff Kelley and the Ohio Subclass members are residents of the State of Ohio.

67.    At all times mentioned herein, Defendant engaged in a consumer transaction in Ohio as defined in R.C. §1345.01(A).

68.    Defendant has committed and continue to commit unfair and deceptive acts or practices in connection with a consumer transaction in violation of the Ohio Consumer Sales Practices Act, R.C. §1345.01, *et seq*., (the "OCSPA"), namely the sale of the Affected Products to

consumers in Ohio while making false and misleading statements concerning the content of the Affected Products.

69.     The practice of making misrepresentations and material omissions regarding a consumer product has been previously determined to be deceptive or unconscionable under the OCSPA.[37]

70.     Defendant has unfairly and deceptively omitted and concealed material information related to the Affected Products from consumers in violation of the OCSPA.

71.     Defendant's unfair and deceptive practices deceived Plaintiff Kelley and the Ohio Subclass and deceived a substantial segment of the target audience.

72.     Defendant's unfair and deceptive practices were material as it influenced purchasing and payment decisions.

73.     Plaintiff Kelley and the Ohio Subclass have been damaged as a direct and proximate result of Defendant's deceptive and unfair practices.

74.     Defendant's conduct outlined herein violates the OCSPA.

75.     Plaintiff Kelley and the Ohio Subclass are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

76.     Defendant's conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiffs and members of the Ohio Subclass to punitive damages and attorneys' fees in an amount to be determined at trial.

---

[37] Pursuant to Ohio Rev. Code Ann. § 1345.09(B), Defendant's alleged acts must have been previously declared to be deceptive or unconscionable under Ohio Rev. Code Ann. §§ 1345.02 or 1345.03. Defendant systematically made misrepresentations and material omissions regarding the Affected Products. Ohio courts have previously declared such actions to be deceptive or unconscionable. See, e.g., *Arales v. Furs by Weiss, Inc*., No. 81603, 2003 WL 21469131, at *1-4 (Ohio Ct. App. June 26, 2003) (retailer's omission to consumer was unfair or deceptive).

## COUNT III

**VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT**
**KY. REV. STAT. § 367.110.** *et seq.*
**(On behalf of Plaintiff Wilson and the Kentucky Subclass against Defendant)**

77.     Plaintiff Wilson hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

78.     Plaintiff Wilson brings this count on behalf of himself and all members of the Class that purchased an Affected Product in Kentucky.

79.     Defendant, Plaintiff Wilson, and the Kentucky Subclass are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

80.     Defendant engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

81.     The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce...." Ky. Rev. Stat. § 367.170(1).

82.     Defendant engaged in misleading, false, or deceptive acts that violated the Kentucky CPA.

83.     Defendant intended to mislead Plaintiff Wilson and Kentucky Subclass members and induce them to rely on its misrepresentations and omissions.

84.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

85.     Under the circumstances, consumers had a reasonable interpretation of Defendant's representations and omissions.

86.     Defendant had a duty to disclose material facts to consumers, including but not limited to, that the Affected Products contain benzene, a known human carcinogen, and are unsafe

for use. These material facts should have been disclosed because they were contrary to Defendant's representations about the Affected Products.

87.    Defendant's acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

88.    The injury to consumers was and is substantial because it was non-trivial and nonspeculative; and involved a concrete monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

89.    Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

90.    Defendant's violations present a continuing risk to Plaintiff Wilson and the Kentucky Subclass, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

91.    Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiff Wilson and the Kentucky Subclass seek to recover actual damages in an amount to be determined at trial; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT IV

**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**TEXAS STATUTES § 17.41 *et seq.***
**(On behalf of Plaintiff Melendez and the Texas Subclass against Defendant)**

92.     Plaintiff Melendez hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

93.     Plaintiff Melendez brings this count on behalf of himself and all members of the Class that purchased an Affected Product in Texas.

94.     Defendant, Plaintiff Melendez, and the Texas Subclass are "persons" within the meaning of the Texas Stat. § 17.45(3).

95.     Defendant engaged in "trade" or "commerce" within the meaning of Texas Stat. § 17.35(6).

96.     The Texas Deceptive Trade Practices and Consumer Protection Act makes unlawful "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce. . ." Texas Stat. § 17.46(a).

97.     Defendant engaged in misleading, false, or deceptive acts that violated the Texas Deceptive Trade Practices and Consumer Protection Act.

98.     Defendant intended to mislead Plaintiff Melendez and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

99.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

100.     Under the circumstances, consumers had a reasonable interpretation of Defendant's representations and omissions.

101.     Defendant had a duty to disclose material facts to consumers, including but not limited to, that the Affected Products contain benzene, a known human carcinogen, and are unsafe

24

for use. These material facts should have been disclosed because they were contrary to Defendant's representations about the Affected Products.

102.    Defendant's acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

103.    The injury to consumers was and is substantial because it was non-trivial and nonspeculative; and involved a concrete monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

104.    Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

105.    Defendant's violations present a continuing risk to Plaintiff Melendez and the Texas Subclass, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

106.    Pursuant to Texas Stat. § 17.50, Plaintiff Melendez and the Texas Subclass seek to recover actual damages in an amount to be determined at trial; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Texas Stat. § 17.41 *et seq*.

## COUNT V

### VIOLATIONS OF DELAWARE CONSUMER FRAUD ACT
**6 Del. Code § 2513** *et seq.*
**(On behalf of Plaintiff Stewart and the Delaware Subclass against Defendant)**

107.    Plaintiff Stewart hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

108.    Plaintiff Stewart brings this count on behalf of himself and all members of the Class that purchased an Affected Product in Delaware.

109.    Defendant is a "person" that is involved in the "sale" of 'merchandise," as defined by 6 Del. Code § 2511(6)-(8).

110.    Defendant advertised, offered, or sold goods or services in Delaware and engaged in trade or commerce directly or indirectly affecting the people of Delaware.

111.    Defendant used and employed deception, fraud, false pretense, false promise, misrepresentation, and the concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression, and omission, in connection with the sale and advertisement of merchandise, in violation of 6 Del. Code § 2513(a).

112.    Defendant acted intentionally, knowingly, and maliciously to violate Delaware's Consumer Fraud Act, and recklessly disregarded Plaintiffs' and Delaware Subclass members' rights.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

113.    Defendant had a duty to disclose material facts to consumers, including but not limited to that the Affected Products contained benzene, which exposed consumers to carcinogens and are unsafe for use.  These material facts should have been disclosed because they were contrary to Defendant's representations about the Affected Products.

114. Instead, Defendant represented that "[s]afety is at the heart of everything [they] do[,]" and Defendant goes "beyond regulatory compliance to ensure every ingredient's safety[,]" and that its products were free of benzene.

115. Plaintiff Stewart and Delaware Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

116. Defendant's unlawful trade practices were gross, oppressive, and aggravated, and Defendant breached the trust of Plaintiff Stewart and Delaware Subclass members.

117. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Stewart and absent Delaware Subclass members have been injured and harmed because they would not have purchased the Affected Products on the same terms if they knew the true facts regarding the benzene content.

118. Plaintiff Stewart and Delaware Subclass members seek all monetary and non-monetary relief allowed by law, including damages under 6 Del. Code § 2525 for injury resulting from the direct and natural consequences of Defendant's unlawful conduct; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT VI

### UNJUST ENRICHMENT
**(On behalf of the Plaintiffs and the Class (or alternatively, the Subclasses) against Defendant)**

119. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

120. Plaintiffs and Class members conferred benefits upon Defendant. Plaintiffs and Class members paid money for Defendant's worthless and defective Affected Products.

121. Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class members.

122.     Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products contain benzene and are unfit and unsafe for human use. If Plaintiffs and Class members had known the true nature of Defendant's Affected Products, they would not have purchased the products. Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

123.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a.      Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

b.      Awarding Plaintiffs and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c.      Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

d.      For declaratory and equitable relief, including restitution and disgorgement;

e.      For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f.      Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

g.     Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

h.     Awarding pre-judgment and post-judgment interest;

i.     For punitive damages; and

j.     Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: December 17, 2021                      Respectfully submitted,


/s/ Joseph J. Braun
Joseph J. Braun (0069757)
Richard S. Wayne (0022390)
Jeffrey A. Levine (0095334)
**STRAUSS TROY**
150 E. 4th Street, 4th Floor
Cincinnati, Ohio 45202
Telephone: 513-621-2120
Facsimile: 513-241-8259
Email: jjbraun@strausstroy.com
          rswayne@strausstroy.com
          jalevine@strausstroy.com


Daniel A. Osborn (*pro hac vice* to be filed)
**OSBORN LAW PC**
43 West 43rd Street, Suite 131
New York, New York 10036
Telephone:        212-725-9800
Facsimile:        212-725-9808
Email: dosborn@osbornlawpc.com

*Counsel for Plaintiffs*